UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
DOMINIQUE B.,

                     Plaintiff,        <u>DECISION AND ORDER</u>
                                          1:22-CV-07146-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In October of 2019, Plaintiff Dominique B.[1] applied for Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the application.  Plaintiff, represented by Gonzalez & Goetz, David B. Goetz, Esq., of counsel, and Bruno, Gerbino,& Soriano, LLP, Vincent Frank Gerbino, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 25).

This case was referred to the undersigned on November 8, 2022. Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket Nos. 22, 26). For the following reasons, Plaintiff's motion is due to be denied, the Commissioner's motion is due to be granted, and this case is dismissed.

## I. BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on October 7, 2019, alleging disability beginning January 1, 2009. (T at 244-50).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held on February 12, 2021, before ALJ Sharda Singh. (T at 65-90). Plaintiff appeared with an attorney and testified. (T at 71-85). The ALJ received testimony from Dr. Jewel Euto, a vocational expert. (T at 86-89).  A second hearing was held on August 13, 2021. (T at 91-113). Plaintiff appeared with her attorney. (T at 91).  The ALJ received testimony from Yaakov Taitz, a vocational expert (T at 109-111), and Dr. Chukwuemeka Efobi, a medical expert. (T at 97-106, 108).

### B.    ALJ's Decision

On November 8, 2021, the ALJ issued a decision denying the application for benefits. (T at 13-33).  The ALJ found that Plaintiff had not

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 17.

engaged in substantial gainful activity since October 7, 2019, the date she applied for benefits. (T at 18).  The ALJ concluded that Plaintiff's bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder were severe impairments as defined under the Social Security Act. (T at 19).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 19).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: she can perform simple, routine, repetitive tasks, in a work setting that requires no more than occasional contact with supervisors, co-workers, and the public. (T at 21).

The ALJ found that Plaintiff had no past relevant work. (T at 26).

Considering Plaintiff's age (59 on the application date), education (at least high school), work experience (no past relevant work), and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 26).  Therefore, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between

October 7, 2019 (the application date) and November 8, 2021 (the date of the ALJ's decision). (T at 27-28).  On July 7, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

### C.    Procedural History

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on August 22, 2022. (Docket No. 1).  On February 9, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket No. 22)  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on April 7, 2023. (Docket Nos. 26, 27).  On April 21, 2023, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 28).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the

Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she

lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months ...."  42 U.S.C. §

423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a

five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is
> currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has
> a "severe impairment" which limits his or her mental or physical
> ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner
> must ask whether, based solely on medical evidence, claimant
> has an impairment listed in Appendix 1 of the regulations. If the
> claimant has one of these enumerated impairments, the
> Commissioner will automatically consider him disabled, without
> considering vocational factors such as age, education, and
> work experience.
>
> 4. If the impairment is not "listed" in the regulations, the
> Commissioner then asks whether, despite the claimant's severe
> impairment, he or she has residual functional capacity to
> perform his or her past work.

5. If the claimant is unable to perform his or her past work, the
Commissioner then determines whether there is other work
which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two primary arguments in support of her request for

reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's

assessment of the medical opinion evidence was flawed, which

undermines the RFC determination.  Second, she challenges the ALJ's

step five analysis.  This Court will address both arguments in turn.

### A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In January of 2021, Dr. Vander Rathore, Plaintiff's treating psychiatrist since June of 2019, completed a medical assessment of ability to do work-related activities (mental) form.

Dr. Rathore opined that Plaintiff had poor or no ability to relate to co-workers, deal with the public, deal with work stress, or maintain attention and concentration. (T at 1018).  He also assessed poor to no capacity with respect to Plaintiff's ability to understand, remember, and carry out complex or detailed job instructions. (T at 1019).

Dr. Rathore rated Plaintiff's ability to understand, remember, and carry out simple job instructions as fair, assessed no limitation in her ability

to follow work rules, and opined that she retained good skills with respect to interacting with a supervisor and functioning independently. (T at 1018-1019).  He further opined that Plaintiff had poor to no ability to relate predictably in social situations, good capacity for maintaining personal appearance and behaving in an emotionally stable manner, and fair ability to demonstrate reliability. (T at 1019).

In August of 2021, Dr. Rathore submitted a follow-up letter, in which he explained that Plaintiff's prognosis was poor and opined that she could not maintain concentration in a work setting due to high anxiety, bipolar disorder, and ADHD. (T at 1044).

Dr. Konstantinos Tsoubris performed a consultative psychiatric evaluation in March of 2020.  He diagnosed bipolar I disorder, unspecified anxiety disorder, panic disorder, post-traumatic stress disorder, and substance use disorder. (T at 894).  Dr. Tsoubris assessed mild limitation in Plaintiff's ability to understand, remember, or apply simple or complex directions and instructions; marked impairment as to interacting adequately with supervisors, co-workers, and the public; no limitation in sustaining concentration and consistently performing a task; marked impairment in sustaining an ordinary routine and regular attendance; and marked limitation in regulating emotions, controlling behavior, and maintaining well-

being. (T at 893-84). Dr. Tsoubris characterized Plaintiff's prognosis as poor. (T at 894).

Dr. Tsoubris performed a second consultative psychiatric evaluation in October of 2020.  He diagnosed bipolar 1 disorder, unspecified anxiety disorder with panic attacks, and opiate use and stimulant disorders, in remission and characterized Plaintiff's prognosis as guarded. (T at 944).

Dr. Tsoubris assessed mild limitation in Plaintiff's ability to understand, remember, or apply simple directions and instructions; marked limitation as to understanding, remembering, or applying complex directions and instructions; marked impairment as to using reason and judgment to make work-related decisions; marked impairment in interacting adequately with supervisors, co-workers, and the public; marked limitation in sustaining concentration and consistently performing a task; marked impairment in sustaining an ordinary routine and regular attendance; and marked limitation in regulating emotions, controlling behavior, and maintaining well-being. (T at 944).

The ALJ found the opinions of Dr. Tsoubris and Dr. Rathore partially persuasive. (T at 25-26).  In sum, the ALJ accepted that Plaintiff had moderate limitations with respect to social interaction and maintaining concentration, persistence, and pace, but found unpersuasive the treating

and examining doctors' assessment of marked impairment. (T at 20, 25-26).

For the following reasons, the Court finds the ALJ's decision supported by substantial evidence and consistent with applicable law. Here's why.

First, the ALJ's decision is supported by other medical opinion evidence.  Dr. Hoffman, a non-examining State Agency review physician, assessed mild limitation in Plaintiff's ability to understand, remember, or apply information; moderate impairment as to interacting with others; moderate limitation with respect to concentration, persistence, and pace; and moderate impairment in adapting and managing herself. (T at 120). Dr. Hoffman opined that Plaintiff could meet the basic demands of competitive, remunerative, unskilled work, including the ability to understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work environment. (T at 124).

Dr. Bruni, another State Agency review physician, opined that Plaintiff had mild limitation in her ability to understand, remember, or apply information; moderate impairment as to interacting with others; moderate limitation with respect to concentration, persistence, and pace; and

moderate impairment in adapting and managing herself. (T at 137).

Although Dr. Bruni indicated marked limitation in Plaintiff's ability to

understand and remember detailed instructions, Dr. Bruni explained in the

narrative portion of the assessment that Plaintiff retained the ability to

understand simple, and some detailed, instructions. (T at 137, 142).

Dr. Chukwuemeka Efobi reviewed the record and testified as a

medical expert at the second administrative hearing, during which he was

cross-examined by Plaintiff's counsel.  Dr. Efobi recognized the following

diagnoses: unspecified bipolar mood disorder (due to substance abuse);

unspecified anxiety disorder (rule out substance induced anxiety);

generalized anxiety and panic; rule-out post-traumatic stress disorder; and

substance abuse disorder (in remission). (T at 98).

Dr. Efobi opined that Plaintiff had no more than moderate limitation in

any area of mental functioning but would perform best with simple tasks

involving no more than occasional interaction with others. (T at 101).  He

found the treatment record inconsistent with the medical opinions

assessing marked impairment in Plaintiff's ability to maintain concentration

and regulate her emotions. (T at 101-106).

These opinions, which are consistent with a reasonable reading of

the record (as discussed further below), provide support for the ALJ's

decision to discount the more restrictive limitations assessed by Dr. Tsoubris and Dr. Rathore. *See Diaz v. Shalala,* 59 F.3d 307, 313 n.5 (2d Cir. 1995)(noting that "opinions of nonexamining sources [may] override treating sources' opinions provided they are supported by evidence in the record")(citing *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993)); *see also Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016); *Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019)("'[S]tate agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'")(quoting *Leach ex rel. Murray v. Barnhart,* 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, at *26 (S.D.N.Y. Jan. 22, 2004)).

Second, the ALJ reasonably read the treatment record as inconsistent with the very restrictive assessments provided by Dr. Tsoubris and Dr. Rathore, and more consistent with the less restrictive findings of Dr. Hoffman, Dr. Bruni, and Dr. Efobi.

Treatment notes show that Plaintiff experienced improved focus and concentration with medication for ADHD. (T at 22-23, 819, 823, 829, 840, 858, 864, 876, 906, 923, 946, 962, 1025, 1036). Although Plaintiff reported psychiatric symptoms characteristic of her diagnoses, mental status

examinations generally documented unremarkable findings, with Plaintiff presenting as cooperative, oriented, and stable. (T at 23, 841, 846, 849, 852, 855, 859, 861, 865, 870, 877, 879, 883, 885, 888, 899, 903, 907, 910, 917, 920, 924, 930, 932, 936, 938, 947, 957, 963, 969, 1026, 1035, 1040).

While ALJs must be careful not to overestimate the significance of a claimant's ability to be cooperative and appropriate during brief visits with supportive medical providers, such evidence can support a decision to discount marked or extreme limitations. *See, e.g., Knief v. Comm'r of Soc. Sec.*, No. 20 Civ. 6242 (PED), 2021 WL 5449728, at *1–2, 8–9 (S.D.N.Y. Nov. 22, 2021) (affirming ALJ decision based on treatment records and mental status examinations that claimant had "meaningful, but not profound, mental restrictions" with chronic anxiety and mood disturbances, adequately treated with regular psychiatric appointments and psychiatric medications); *Burchette v. Comm'r of Soc. Sec.*, No. 19 CIV. 5402 (PED), 2020 WL 5658878, at *10 (S.D.N.Y. Sept. 23, 2020)("In sum, Dr. Phillips' opinion, combined with largely unremarkable mental status examination findings in the treatment record and plaintiff's ADLs, provide substantial evidence for the ALJ's RFC determination.").

In addition, the ALJ relied on evidence that Plaintiff engaged in activities inconsistent with the more extreme assessments of limitation.  In

particular, Plaintiff stated that she was "busy running" a vintage antique shop with her mother during the time period in question. (T at 23, 849, 923, 926, 968, 1034).

The ALJ could not determine whether Plaintiff's participation in the operation of a small business constituted substantial gainful activity and assumed for purposes of the decision that the work did not rise to that level (T at 18).

The ALJ, however, could nevertheless rely on Plaintiff's performance of this work as a basis for discounting the more restrictive assessments of her abilities. *See* 20 C.F.R. §§ 404.1571, 416.971; *Rivers v. Astrue*, 280 F.App'x 20, 23 (2d Cir. May 28, 2008); *Justin B. v. Comm'r of Soc. Sec.*, No. 20-CV-01810-MJR, 2022 WL 17592399, at *8 (W.D.N.Y. Dec. 13, 2022).

The ALJ also noted that Plaintiff's activities of daily living included cooking, driving, watching television, knitting, and shopping. (T at 23, 78-85, 378-82, 406-14, 893, 943).

While ALJs must not overinterpret a claimant's ability to perform limited activities of daily living, an ALJ may discount an assessment of marked impairment where, as here, the claimant's activities are arguably not consistent with that level of impairment. *See Santana v. Saul*, No. 18

CIV. 10870 (PED), 2019 WL 6119011, at *8 (S.D.N.Y. Nov. 18, 2019)

(collecting cases recognizing ALJ's ability to discount assessment as

inconsistent with claimant's activities); *see also Dorta v. Saul*, No.

19CV2215JGKRWL, 2020 WL 6269833, at *6 (S.D.N.Y. Oct. 26, 2020).

Lastly, the ALJ did not disregard the evidence of limitation in

Plaintiff's mental functioning but instead limited her to work requiring no

more than simple, routine, repetitive tasks, with only occasional contact

with supervisors, co-workers, and the public. (T at 21). *See McIntyre v.*

*Colvin*, 758 F.3d 146, 150-51 (2d Cir. 2014)(finding that ALJ appropriately

accounted for moderate work-related psychiatric limitations by limiting the

claimant to unskilled, low stress work involving limited contract with others);

*see also Platt v. Comm'r of Soc. Sec.*, 588 F. Supp. 3d 412, 422 (S.D.N.Y.

2022)(collecting cases); *Walters v. Saul*, No. CV 19-3232 (AYS), 2021 WL

4861521, at *11 (E.D.N.Y. Oct. 19, 2021); *Jacqueline L. v. Comm'r of Soc.*

*Sec.*, 515 F. Supp. 3d 2, 12 (W.D.N.Y. 2021).

Plaintiff offers an alternative reading of the record and a different

weighing of the competing medical opinions.  However, for the reasons

discussed above, the Court concludes that the ALJ's decision is supported

by substantial evidence and, therefore, must be sustained under the

deferential standard of review applicable here. *See DuBois v. Comm'r of*

*Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *8 (S.D.N.Y. Mar.

21, 2022)("To be sure, there is some evidence in the record that would

support the conclusion that plaintiff had greater limitations than those the

ALJ built into her RFC. But that is not the test."); *Brault v. SSA*, 683 F.3d

443, 448 (2d Cir. 2012) (per curiam)("The substantial evidence standard

means once an ALJ finds facts, [a court] can reject those facts only if a

reasonable factfinder would *have to conclude* otherwise.")(emphasis in

original) (citation and internal quotation marks omitted).

    *B.*   *Step Five Analysis*

    At step five of the sequential analysis, the Commissioner determines

whether claimant can perform work that exists in significant numbers in the

national economy.  The Commissioner bears the burden of proof at this

step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

    In the present case, the ALJ found that there were jobs that exist in

significant numbers in the national economy that Plaintiff can perform. (T at

26-27).  In reaching this conclusion, the ALJ relied on the opinions of two

vocational experts. The first testified that a hypothetical claimant with a

somewhat more restrictive RFC than Plaintiff could perform the

representative occupations of laundry checker, warehouse stubber, and

cutter II fabrication. (T at 27, 87-88).  The second vocational expert opined

that a hypothetical claimant with the same RFC as Plaintiff could perform the representative occupations of hand packager, cleaner industrial, and price marker. (T at 27, 110-111).

Plaintiff challenges the ALJ's step five findings, arguing that the ALJ failed to resolve an apparent conflict between the vocational experts' testimony and the *Dictionary of Occupational Titles* ("DOT").

The Social Security Administration has taken administrative notice of the DOT, which is published by the Department of Labor and provides detailed descriptions of the requirements for a variety of jobs. *See* 20 CFR § 416.966 (d)(1).

Social Security Ruling 00-4p provides that when a vocational expert testifies regarding job requirements, the ALJ has "an affirmative responsibility to ask about any possible conflict between that [testimony] and information provided in the DOT …."  SSR 00-4p.

If there appears to be a conflict between the DOT and the vocational expert's testimony, the DOT is "so valued" that the ALJ is obliged to obtain a "reasonable explanation" for the conflict. *Brault*, 683 F.3d at 446(citing SSR 004-p); *see also Lockwood v. Comm'r of SSA,* 914 F.3d 87, 91 (2d Cir. 2019).

Plaintiff argues that the DOT descriptions for five of the six representative occupations relied upon by the ALJ require the ability to carry out detailed instructions. According to Plaintiff this presents an unresolved conflict between the vocational experts' testimony and the DOT.

The Court disagrees for the following reasons.

First, the DOT descriptions evidence that the jobs in question require commonsense understanding sufficient to carry out detailed, but uninvolved, written or oral instructions.  Courts in this Circuit have generally concluded that claimants limited to simple, routine tasks are not precluded from performing such jobs. *See Laboriel v. Saul*, No. 18-CV-5294-KPF-OTW, 2019 WL 6831762, at *12 (S.D.N.Y. Aug. 22, 2019)(collecting cases); *Benique v. Kijakazi*, No. 20CV3243PAEOTW, 2021 WL 4894582, at *7 (S.D.N.Y. Sept. 10, 2021).

Second, even if five of the six occupations were eliminated on this basis, the cutter II fabrication position would still be available. The vocational expert testified that there were 54,000 of those jobs available in the national economy. (T at 27, 88).

The Social Security Act and Commissioner's regulations do not "provide a definition for a 'significant' number of jobs." *Koutrakos v. Colvin*, No. 3:13-CV-1290 (JGM), 2015 WL 1190100, at *21 (D. Conn. Mar. 16,

2015). Courts have held that the "significant number" threshold is "fairly minimal," and they are "generally guided by numbers that have been found 'significant' in other cases." *See Hamilton v. Comm'r of Soc. Sec*., 105 F. Supp. 3d 223, 229-30 (N.D.N.Y. 2015)(collecting cases).

While there is authority to suggest that 4,000-5,000 jobs are not a significant number, *see id*., a total number over 17,000 is considered sufficient to satisfy the Commissioner's step five burden. *See Mota v. Comm'r of Soc. Sec*., No. 20-CV-07294 (SN), 2022 WL 464098, at *12 (S.D.N.Y. Feb. 15, 2022)(9,600 jobs is a significant number); *Hanson v. Comm'r of Soc. Sec*., No. 15-CV-150 (GTS) (WBS), 2016 WL 3960486, at *13 (N.D.N.Y. June 29, 2016) (finding that national numbers from 9,000 and up was "significant"), *adopted by Hanson v. Colvin*, 2016 WL 3951150 (N.D.N.Y. July 20, 2016); *Gray v. Colvin*, No. 12-CV-6485L, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19, 2014)(16,000 jobs is significant).

Lastly, Plaintiff argues that the ALJ erred by relying on the vocational experts' testimony, as their testimony was based on the DOT, which has not been updated since 1991 and is therefore outdated and unreliable.

This argument has been consistently rejected by courts in this Circuit and Plaintiff cites no authority to support a contrary conclusion. *See Strong v. Berryhill*, No. 17-CV-1286F, 2019 WL 2442147, at *6 (W.D.N.Y. June 12,

2019)(collecting cases); *Johnson v. Saul*, No. 3:19-cv-01222, 2020 WL 6562402, at *11 (D. Conn. Nov. 9, 2020) ("[I]t is well settled that the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules."); *Harrison v. Comm'r of Soc. Sec.*, No. 20-CV-5282 (BCM), 2022 WL 1289357, at *11 (S.D.N.Y. Apr. 29, 2022).

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 22) is DENIED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 26) is GRANTED; and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: November 13, 2023           *s/ Gary R. Jones*
                                   GARY R. JONES
                                   United States Magistrate Judge